UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE OWEN,

        Plaintiff,        CASE NO. 17-12312
                                HON. DENISE PAGE HOOD

v.

MEGAN J. BRENNAN,
POSTMASTER GENERAL OF THE
UNITED STATES POSTAL SERVICE

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#19]

**I.   BACKGROUND**

On July 15, 2017, Plaintiff Denise Owen ("Owen") filed a Complaint against the Postmaster General, Megan J. Brennan ("Brennan"), alleging: race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Counts I and VI); race discrimination, retaliation, age discrimination, and gender discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101 *et seq.* (Counts II, III, V, and VII); and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") (Count IV). (Doc # 1) There was a Stipulated Order entered on January 17, 2018, in which Owen's race discrimination, retaliation, age

1

discrimination, and gender discrimination claims brought forward under the ELCRA (Counts II, III, V, and VII) were dismissed.  (Doc # 7)

This matter is before the Court on Brennan's Motion for Summary Judgment, filed on November 6, 2018.  (Doc # 19)  Owen filed a Response to Brennan's Motion on December 13, 2018.  (Doc # 21)  Brennan filed a Reply on December 26, 2018.  (Doc # 24)

The following facts are undisputed.  Owen began working for the United States Postal Service in 1978 and is currently the Postmaster in Clarkston, Michigan. (Doc # 19-2, Pg ID 99)  Owen is a white woman who was 57 years old when the events that formed the basis for this case transpired.  (Doc # 19-3, Pg ID 162-163) From December 31, 2011 through September 28, 2012, Owen served in two temporary details as Officer-in-Charge of the Sterling Heights, Michigan Post Office.  (Doc # 19-4; Doc # 19-5)  Owen's initial detail assignment order stated that she would serve in her position from December 31, 2011 through March 30, 2012. (Doc # 19-4)  Owen's second detail assignment order stated that she would serve in her detail position from March 31, 2012 through September 28, 2012.  (Doc # 19-5) The United States Postal Service's policy allows employees to serve in detail positions for a limited period of time and these temporary assignments "may be terminated at any time, either at management's discretion or at the employee's request."  (Doc # 19-6, Pg ID 184-185)

The Sterling Heights Post Office is a Level 24 post office. (Doc # 19-3, Pg ID 163) During Owen's temporary details, her pay rate was EAS-21, and she received a 5% premium for detailing to a higher-level office. (Doc # 19-2, Pg ID 106; Doc # 19-7) Owen was supervised by Richard Moreton ("Moreton"), who was a Post Office Operations Manager ("POOM"). (Doc # 19-2, Pg ID 102) Moreton is a white man who was 48 years old when Owen's second detail ended. (Doc # 19-8, Pg ID 188) On about September 29, 2012, Moreton informed Owen that she was being replaced in her detail with another employee, Kim Dontje ("Dontje"). (*Id.* at 192.) Moreton explained to Owen that he was ending her detail because he wanted to afford Dontje an opportunity. (*Id.* at 193.) Dontje is a white woman who was 49 years old when Owen's second detail ended and served as a Level 22 Postmaster in Roseville, Michigan. (*Id.* at 192.) Owen acknowledges that she did not recall Moreton ever making any comments to her about her race or the race of any of the other employees. (Doc # 19-2, Pg ID 131)

Once Owen's Sterling Heights detail ended, Owen was offered another detail in Roseville, which was a Level 22 post office. (Doc # 19-2, Pg ID 118) Owen would have received the same premium pay for a detail in Roseville that she received in Sterling Heights. (*Id.* at 120.) The Roseville post office is about 8.8 miles away from the Sterling Heights post office. (Doc # 19-10, Pg ID 213) Owen declined the Roseville detail and chose to return to her position in Clarkston because she felt that

the commute from her home in Lapeer, Michigan to Roseville was too far. (Doc # 19-2, Pg ID 102, 118)

At the time when Moreton replaced Owen with Dontje, Angela Isby ("Isby") was not removed from her position in a higher-level detail. (Doc # 19-12) Isby is a black woman, and was 42 years old and a Level 20 Postmaster when Owen's Sterling Heights detail ended. (Doc # 19-11) Isby had been serving in her detail position for less than five months when Owen was removed from her detail. (Doc # 19-12)

Although Owen did not accept the detail position in Roseville, on September 5, 2012, she applied for open Postmaster positions in Troy and Pontiac, Michigan. (Doc # 19-3, Pg ID 168-169) The Troy Postmaster position was posted as an EAS-22 position (Doc # 19-13) and the Pontiac Postmaster position was posted as an EAS-24 position (Doc # 19-14). Owen interviewed for the open positions on September 20, 2012. (Doc # 19-15) Moreton and Rhonda Wright ("Wright"), both POOMs, conducted her interview. (Doc # 19-2, Pg ID 140-141) Owen scored 31 out of a possible 60 points on her interview. (Doc # 19-15, Pg ID 224) By comparison, the interview scores of candidates William Lane ("Lane") and Ronald Morris ("Morris") were 40 and 48.5, respectively. (Doc # 19-16, Pg ID 229; Doc # 19-17, Pg ID 235) Lane, who was a 43-year-old male at the time, was selected for the Troy Postmaster position, and Morris, who was a 37-year-old male at the time, was selected for the Pontiac Postmaster position. (Doc # 19, Pg ID 74; Doc # 19-

4

18; Doc # 19-19) Wright was the selecting official who decided not to offer Owen the Postmaster positions in Troy and Pontiac, and expressed to Owen that she was not selected for either position due to her interview performance. (Doc # 19-2, Pg ID 151; Doc # 19-23, Pg ID 278)

Owen alleges that she was discriminated against in three instances, including when she was: (1) removed from her detail position in Sterling Heights; (2) not selected for the Postmaster position in Troy; and (3) not selected for the Postmaster position in Pontiac. (Doc # 21, Pg ID 301-303) Specifically, in regard to the first instance, Owen asserts that she was discriminated against on the basis of her race and age in violation Title VII and the ADEA. (Doc # 19-2, Pg ID 131) Owen supports her assertions by claiming that Isby retained her job and was of a different race and was younger than Owen, and argues that Dontje replaced Owen and was younger than Owen. Owen additionally claims that as it pertains to the second and third instances, she was discriminated against on the basis of her sex and age in violation of Title VII and the ADEA. (*Id.* at 151.) Owen supports these claims by arguing that Lane and Morris received their positions and were both of a different sex than Owen and were younger than Owen.

Owen seeks lost wages and benefits, past and future, in whatever amount she is found to be entitled. (Doc # 1, Pg ID 9) Owen also requests compensatory, punitive, and exemplary damages as well as interest, costs, and reasonable attorney

fees. (*Id.* at 9-10.) Owen requests that the Court issue an order reinstating her to "the position she would have held if there had been no discrimination and retaliation," and an injunction prohibiting "any further acts of retaliation or discrimination." (*Id.* at 10.)

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the court must view admissible evidence in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

#### A. Applicable Law

Under Title VII, a "plaintiff bringing a[n] ... employment discrimination claim must present either direct evidence of discrimination, or circumstantial evidence that allows for an inference of discriminatory treatment." *Reeder v. City of Wayne*, 177 F.Supp.3d 1059, 1079 (E.D. Mich. 2016) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)). The same is true for an ADEA claim. *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008)).

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 3137 F.3d 564, 570 (6th Cir. 2003). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). "Circumstantial evidence ... is proof that does not on

its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570.

In order to establish a prima facie case of discrimination under Title VII, a plaintiff must establish that: (1) she was a member of a protected class; (2) she was subject to an adverse employment decision; (3) she was qualified for the position she held; and (4) that she was replaced by someone of a different class, or treated differently than persons in a different class, such that it supports an inference of discrimination. *See, e.g., Diebel v. L & H Res., LLC*, 492 Fed.Appx. 523, 526-27 (6th Cir. 2012); *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action against the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *McDonnell Douglas*, 411 U.S. 792, 805 (1973). Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805.

A plaintiff can establish pretext by producing evidence sufficient for a jury to reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against the plaintiff. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) ("A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct"). *See also Harris v. Metro. Govt. of Nashville and Davidson Cnty., Tenn.*, 594 F.3d 476, 486 (6th Cir. 2010); *Dubey v. Stroh Brewery Co.*, 185 Mich.App. 561, 565-66 (1990). A plaintiff must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Harris*, 594 F.3d at 486. A plaintiff cannot establish a prima face case of discrimination based on vague, ambiguous or isolated remarks. *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000) (citation omitted).

With respect to Owen's ADEA claims based on age discrimination, a plaintiff must establish that she was: (1) a member of a protected class (over 40 years old); (2) subject to an adverse employment decision; (3) qualified for the position she held; and (4) replaced by someone of a different class (under 40 years old), or treated differently than persons in a different class (under 40 years old), such that it supports an inference of discrimination. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523-28 (6th Cir. 2008); *Tuttle v. Metro. Govt. of Nashville*, 474 F.3d 307, 317 (6th

Cir. 2007). "The *McDonnell Douglas* framework can still be used to analyze ADEA claims based on circumstantial evidence," *Geiger*, 579 F.3d at 622-23, but not in cases where the ADEA claim is based on direct evidence.

**B. Sterling Heights Detail**

Brennan argues that Owen was not removed from her Sterling Heights detail because of her race or age. First, Brennan claims that Owen cannot make out her prima facie case for discrimination since the second prongs, being subject to an adverse employment action, under both Title VII and the ADEA, have not been met. Brennan argues that Owen's Sterling Heights detail was "temporary in nature" and pursuant to the United States Postal Service's policies, Owen could have been terminated at any time. Brennan additionally supports her argument by claiming that Owen's termination from her Sterling Heights detail should not be considered an adverse employment action because Moreton offered Owen another detail in Roseville, where she would have earned the same pay that she was earning in Sterling Heights. Owen has not responded directly to Brennan's arguments.

The Court is unpersuaded by Brennan's contentions. Moreton explained that he did not give Owen an end date in regard to her Sterling Heights detail and admitted to removing Owen from her detail assignment in favor of hiring Dontje. (Doc # 19-8, Pg ID 190-191) These admissions from Moreton conflict with Owen's

second assignment order (Doc # 19-15), and Moreton's comments create a genuine issue of material fact as to the second prongs of Owen's race and age discrimination claims. Further, Brennan's argument that Owen's Sterling Heights detail was not an adverse employment action because Owen was offered another detail in Roseville is not compelling. Although Owen had another opportunity to participate in a detail in Roseville, that does not somehow negate the fact that Owen was allegedly discharged from her detail in Sterling Heights. The Court also notes that there is a dispute as to whether the Roseville detail was a reasonable alternative due to the additional distance that Owen would have had to travel had she accepted the Roseville position. Since a reasonable jury could conclude that Owen was subject to an adverse employment action, the Court finds that the second prongs of the analysis for discrimination under Title VII and the ADEA have been satisfied at this stage.

Brennan also asserts that the fourth prong of the ADEA discrimination analysis has not been met. Brennan contends that since Dontje and Isby are both over 40 years old, and therefore in the same protected class as Owen, Owen must demonstrate a significant age difference to establish her claim. Owen responds to Brennan's assertion by claiming that she has met her prima facie case because Owen is eight years older than Dontje. Owen also argues that courts in the Sixth Circuit have held that a six-year age difference between comparatives is significant. While

Owen does not directly mention Isby and the age difference between both individuals *in response* to Brennan, the Court will address this issue because Owen did offer Isby as an example of age discrimination in her Complaint. (Doc # 1, Pg ID 4)

"In age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Grosjean*, 349 F.3d at 335. It is recognized in the Sixth Circuit that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Id.* at 340. If the age difference between a plaintiff and her replacement is between six to ten years, those situations must be taken into consideration on a case-by-case basis depending on the circumstances of the case. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 284 (6th Cir. 2012).

The relevant inquiry involves individuals, Dontje and Isby, who were both over forty years old when Owen's detail ended. Since Dontje was eight years younger than Owen when her detail ended, the Court has the discretion to consider whether the age difference between her and Owen was significant. The Court finds that even though Dontje was eight years younger than Owen when Owen was

replaced, the lack of direct evidence of age animus makes the age difference between these parties insignificant.  *See Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 467 (6th Cir. 2014).  Owen has only offered two pieces of evidence to demonstrate that Owen was removed from her detail due to her age: (1) that Moreton asked her when she planned to retire; and (2) that Moreton called her on September 7, 2012 to ask if it was true that she used to get hurt and was on limited duty.  (Doc #19-3, Pg ID 163, 165)  As to the first piece of evidence, courts have regularly held that comments made by an employer to their employee regarding her expected retirement date are not direct evidence of age discrimination.  *See, e.g., Shrivastava v. RBS Citizens Bank, N.A.*, 227 F. Supp. 3d 824, 832 (E.D. Mich. 2017).  The second piece of evidence is insubstantial because it does not demonstrate that Moreton took action against Owen because of her *age*.  The Court finds that the comments made by Moreton do not support an inference of discrimination.

The Court finds however that a jury could reasonably reach the conclusion that Owen might have been terminated based on her age since Isby, who was fifteen years younger than Owen when Owen's Sterling Heights detail ended, was not removed from her detail position.  Brennan contends that Isby's retention does not satisfy the fourth prong because Isby was not similarly situated to Owen due to the fact that Isby's detail was several months shorter than Owen's detail.  This argument is misplaced though since the fourth prong of the ADEA analysis does not require a

plaintiff to be replaced or treated less favorably than an employee who is *similarly situated*. For purposes of our analysis, the Court need only consider whether a jury could find that Owen was replaced by a significantly younger person. *Grosjean*, 349 F.3d at 335. Therefore, the fourth prong of the ADEA analysis has been satisfied at this stage as to Isby.

Next, Brennan contends that Owen has not presented any direct or circumstantial evidence demonstrating race or age discrimination. Owen does not directly respond to this argument, but does seemingly assert that there is circumstantial evidence that shows the existence of race and age discrimination. More specifically, Owen claims that race discrimination is evidenced by the fact that Isby, a black woman, *was not* removed from her position even though Owen, a white woman, *was* removed from her detail. Owen additionally asserts that age discrimination is present considering that Isby was not terminated and Dontje replaced Owen, while both women were younger than Owen. The Court finds that at this stage, Owen's evidence constitutes circumstantial evidence of race and age discrimination as a factfinder could draw a reasonable inference that discrimination occurred. *See Wexler*, 317 F.3d at 570.

Brennan additionally claims that even if Owen establishes a prima facie case for her claims under Title VII and the ADEA, Owen cannot offer evidence of pretext.

Brennan's legitimate, nondiscriminatory reason for the adverse employment action taken against Owen is that Moreton replaced Owen because he wanted to give Dontje an opportunity. In viewing the evidence in the light most favorable to Owen, there is a genuine dispute as to whether a reasonable jury would find that Brennan's explanation constitutes a legitimate, nondiscriminatory reason for replacing Owen. Therefore, the Court finds that at this stage, Owen is not required to show evidence of pretext.

As it pertains to Owen's ADEA age discrimination claim that relates to Dontje, Brennan's Motion is **GRANTED**. Regarding Owen's Title VII and ADEA race and age discrimination claims that relate to Isby, Brennan's Motion is **DENIED**.

### C. Postmaster Positions in Troy and Pontiac

Brennan argues that Owen has not provided sufficient evidence to support her claim that she was not selected for the Postmaster positions in Troy or Pontiac because of her sex or age. Brennan does not dispute that Owen can make out her prima facie case for sex or age discrimination, but contends that there were legitimate, nondiscriminatory reasons for Owen not being hired— Lane and Morris having better interviews and test scores than Owen. Brennan further argues that Owen cannot demonstrate pretext to rebut Brennan's reasons for selecting Lane and Morris over Owen.

In response, Owen asserts that pretext exists. Owen claims that the fact that she had a poor interview is subjective, and should not be considered sufficient evidence for a jury to reject Brennan's offered reasons for Owen not being promoted. Owen also claims that Wright attempted to demean Owen's overall job performance during her interview, which she claims should be taken into account by the Court. *See Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination….").

In order for a plaintiff to succeed in a failure to promote Title VII discrimination case, she must show that: (1) the plaintiff is a member of the protected class; (2) the plaintiff applied for and was qualified for the desired position; (3) she was considered but not selected for the position; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). Plaintiffs attempting to demonstrate a failure to promote claim in ADEA actions must follow the same analysis, but in these instances, the fourth prong is slightly different and requires that plaintiffs show that "other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion

was denied." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812–13 (6th Cir. 2011).

The Court finds that Owen has not offered any support for her contention that there is legitimate pretext demonstrating that there is evidence that could lead a reasonable jury to reject Brennan's explanation and infer that Brennan discriminated against Owen on the basis of her sex and/or age. Owen's response to Brennan's first offered reason for not promoting Owen, that Owen had a poor interview performance, is unpersuasive. Owen claims that such a reason is subjective, but Owen herself confirmed that the interview did not go well. (Doc # 19-2, Pg ID 142) Owen also claims that Wright attempted to demean Owen's overall job performance during the interview. The Court does not find that this evidence alone creates a genuine issue of material fact because even if Wright did not accurately recognize Owen's job performance, that does not demonstrate that Owen did not have a poor interview. Finally, the Court notes that regardless of how the interview went, Brennan's other legitimate, nondiscriminatory reason for not promoting Owen—her test scores being lower than Lane and Morris'—has not been rebutted by Owen. The test score measure is completely *objective*, and constitutes a legitimate and nondiscriminatory reason for Brennan choosing Lane and Morris for the Troy and Pontiac Postmaster positions over Owen.

17

The Court consequently **GRANTS** Brennan's Motion regarding Owen's Title VII and ADEA sex and age discrimination claims pertaining to Lane and Morris and the Troy and Pontiac Postmaster positions.

IV. **CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Megan Brennan's Motion for Summary Judgment (Doc # 21) is **GRANTED IN PART AND DENIED IN PART**.

IT IS FURTHER ORDERED that Defendant Megan Brennan's Motion is **GRANTED** in regard to Plaintiff Denise Owen's ADEA age discrimination claim pertaining to Kim Dontje and the Sterling Heights detail.

IT IS FURTHER ORDERED that Defendant Megan Brennan's Motion is **DENIED** in regard to Plaintiff Denise Owen's Title VII and ADEA race and age discrimination claims pertaining to Angela Isby and the Sterling Heights detail.

IT IS FURTHER ORDERED that Defendant Megan Brennan's Motion is **GRANTED** in regard to Plaintiff Denise Owen's Title VII and ADEA sex and age discrimination claims pertaining to William Lane and Ronald Morris and the Troy and Pontiac Postmaster positions.

s/Denise Page Hood
DENISE PAGE HOOD
DATED: August 22, 2019　　　　　　　　United States District Judge